IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,       )
                                )
            vs.                 )  CR 09-278 (see CA 13-1451)
                                )  CR 09-279 (see CA 13-1452)
GREGORY J. PODLUCKY,            )  CR 11-37 (see CA 13-1453)
                                )
            Defendant/Petitioner. )

MEMORANDUM OPINION

Petitioner Gregory J. Podlucky, on October 6, 2013, filed a

Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody (Doc. No. 64 at CR 09-

278; Doc. No. 376 at CR 09-279; Doc. No. 264 at CR 11-37).  On

November 25, 2013, he filed a memorandum in support thereof

(Doc. No. 70 at CR 09-278; Doc. No. 382 at CR 09-279; Doc. No.

270 at CR 11-37), as well as a response to the Court's October

9, 2013 Show Cause Order (Doc. No. 69 at CR 09-278; Doc. No. 381

at CR 09-279; Doc. No. 269 at CR 11-37).  Upon consideration of

Petitioner's motion, memorandum, and response, and upon further

consideration of the various responses and replies subsequently

filed by Petitioner and the Government (Doc. Nos. 72, 75, 76 and

77 at CR 09-278; Doc. Nos. 386, 390, 392, and 393 at CR 09-279;

Doc. Nos. 272, 275, 276, and 277 at CR 11-37), the Court

dismisses Petitioner's motion for the reasons set forth below.

1

## I.   **Background**

On June 20, 2011, Petitioner pled guilty to Count Three of the indictment at Criminal No. 09-278, charging him with income tax evasion, in violation of 26 U.S.C. § 7201, Count Twenty-four of the superseding indictment at Criminal No. 09-279, charging him with mail fraud, in violation of 18 U.S.C. § 1341, and Count One of the indictment at Criminal No. 11-37, charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  In connection with his plea, he and the Government entered into a plea agreement which provided that Petitioner would be subject to a term of imprisonment of not more than 20 years, a term of supervised release of 5 years, no fine, a special assessment of $300, and restitution as determined by the Court.  The agreement expressly clarified that Petitioner "understands that the Government will seek a sentence of 20 years imprisonment," but that he reserves the right to seek a lesser sentence.  The agreement further contained a provision (Section A.6) providing:

> [Petitioner] agrees to the criminal forfeiture of all pieces of gems and jewelry that were seized as evidence during the investigation and are currently in the possession of the United States (hereafter the Subject Jewelry), with the exception of certain personal pieces to be agreed upon by the parties pursuant to Title 21, United States Code, Section 853(p).

2

Petitioner acknowledged that this "Subject Jewelry" was criminally forfeitable to the Government as a substitute asset and voluntarily consented to the Court entering an order of forfeiture against the Subject Jewelry in favor of the United States. The plea agreement also contained a provision setting forth the reciprocal obligations of the Government in regard to the Subject Jewelry (Section B.5), which provided that the Government "will return the personal pieces of jewelry as agreed upon by the parties in paragraph A.6 above, to the defendant free and clear of the forfeiture rights of the United States."

Also included in the plea agreement was a waiver of certain appellate rights as well as a provision that Petitioner "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." The agreement further stated that it

> sets forth the full and complete terms and
> conditions of the agreement between
> [Petitioner] and the [Government], and there
> are no other agreements, promises, terms or
> conditions, express or implied.

Petitioner signed the agreement and agreed at the plea hearing that he had agreed to the terms set forth in the agreement,

which both the Government and the Court reviewed for him at that
hearing.  The Court accepted Petitioner's plea.

On October 20, 2011, the Court sentenced Petitioner to
60 months' imprisonment at Criminal No. 09-278, 240 months'
imprisonment at Criminal No. 09-279, and 240 months'
imprisonment at Criminal No. 11-37, all to be served
concurrently, and to be followed by 3 years' supervised release
at Criminal No. 09-278, 5 years' supervised release at Criminal
No. 09-279, and 3 years' supervised release at Criminal No. 11-
37, all to be served concurrently.  The Court further ordered
restitution at Criminal No. 09-279 in the amount of
$661,324,329.81.  Judgment was entered on October 24, 2011.
Although Petitioner filed a notice of appeal on November 3, 2011
at these cases, the Third Circuit Court of Appeals summarily
dismissed the appeals based on Petitioner's waiver of his
appellate rights.  (Doc. No. 60 at CR 09-278; Doc. No. 356 at CR
09-279; and Doc. No. 245 at CR 11-37).  Petitioner subsequently
filed the present motion pursuant to 28 U.S.C. § 2255 at all
three of his criminal cases.  Because the Court was aware of the
waiver of the right to file a Section 2255 motion contained in
the plea agreement entered into by Petitioner, it ordered
Petitioner to show cause why his motion should not be dismissed
on the basis of this waiver.  Petitioner filed a response

setting forth various reasons why the Court should not enforce
the waiver, to which the parties have filed several replies.

## II.      <u>Discussion</u>

Section 2255 permits a prisoner sentenced by a federal
court to move the court that imposed the sentence to "vacate,
set aside, or correct the sentence" where: (1) the sentence was
imposed in violation of the Constitution or laws of the United
States; (2) the court was without jurisdiction to impose such
sentence; (3) the sentence was in excess of the maximum
authorized by law; or (4) the sentence is otherwise subject to
collateral attack.  <u>See</u> 28 U.S.C. § 2255(a).  However, a
criminal defendant may waive his right to file a motion under
Section 2255 or to otherwise seek collateral relief.  Such a
waiver is valid if entered into "knowingly and voluntarily"
unless it would work a "miscarriage of justice."  <u>United States
v. Khattak</u>, 273 F.3d 557, 558 (3d Cir. 2001); <u>United States v.
Mabry</u>, 536 F.3d 231, 237-38 (3d Cir. 2008).  A district court
has an affirmative duty to conduct an evaluation of the knowing
and voluntary nature of the waiver and to assure itself that its
enforcement works no miscarriage of justice.  <u>See</u> <u>Mabry</u>, 536
F.3d at 237-38.

Petitioner raises three primary arguments in his
attempt to invalidate the waiver of his right to attack his

sentence collaterally contained in the plea agreement.  First,
he argues that the Government, by failing to return the personal
pieces of jewelry identified in Sections A.6 and B.5 of the plea
agreement (the "Personal Jewelry") to him, breached the
agreement, invalidating the collateral waiver.  Second, he
argues that his trial counsel's ineffectiveness renders the
waiver unenforceable.  Finally, he argues that his counsel's
conflict of interest in this case prevents enforcement of the
waiver.  However, none of these arguments establish that the
waiver was anything other than knowing or voluntary, or that
enforcement would work a miscarriage of justice.

### A.  Government's Alleged Breach of the Plea Agreement

As mentioned above, Petitioner's first argument is
that the waiver contained in the plea agreement is void and
unenforceable because the Government breached the plea agreement
by failing to satisfy its obligations under that agreement.  In
making this argument, he relies primarily on United States v.
Schwartz, 511 F.3d 403 (3d Cir. 2008), in which the Third
Circuit held that a "defendant's appellate waiver is not
enforceable if the government breaches its own obligations under
a plea agreement."  Id. at 405 (citing United States v.
Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989)).  The Third
Circuit also explained in that decision that plea agreements are

strictly construed against the Government and that such agreements must be construed according to the general principles of contract law.  See id.

The provisions of the plea agreement which the Government allegedly breached are those discussed above pertaining to the return of the Personal Jewelry.  Specifically, Petitioner alleges that the Government breached its obligation under Section B.5, which provides that the Government "will return the personal pieces of jewelry as agreed upon by the parties in paragraph A.6 above, to the defendant free and clear of the forfeiture rights of the United States."  Petitioner's position is that, since he has not received any of the pieces of jewelry seized as evidence during the investigation and in the possession of the United States, the Government has not returned the personal pieces it agreed to return.  Although the Court is accepting as true Petitioner's claim that the Government has not returned any seized jewelry to him, the Court does not find that the Government has breached the plea agreement by failing to do so.

As noted, in construing a plea agreement, the general principles of contract law apply.  Under general contract law, "agreements to agree" are not generally enforceable.  See Fish Net, Inc. v. Profitcenter Software, Inc., 2013 WL 5635992, at *6

7

(E.D. Pa. Oct. 15, 2013) (citing <u>Trowbridge v. McCaigue</u>, 992
A.2d 199, 202 (Pa. Super. Ct. 2010) and <u>Mongeluzzi v. Pansini &
Lessin</u>, 61 Pa. D. & C. 4th 52, 70 (Ct. Com. Pl. 2001)("Under
Pennsylvania law, an agreement to agree is not an enforceable
contract.")).  Such agreements to come to further agreement fail
to spell out the scope of the parties' respective duties or
establish a meeting of the minds as to what the actual terms of
the contract should be.  <u>See</u> <u>id.</u>  As discussed, Section B.5
provides that the Government "will return the personal pieces of
jewelry **as agreed upon by the parties**."[1]  It does not identify
any particular pieces, nor does it set forth a procedure or
mechanism for determining what those pieces should be.  There is
no way for the Court to enforce such an agreement because it
requires merely that the parties come to some later further
agreement.  As such, it is unenforceable, and cannot have been
breached by the Government.[2]

---

[1]    The Court notes that Section A.6, although it must be
considered in interpreting Section B.5, sets forth the duties of
Petitioner in regard to the Personal Jewelry, not those of the
Government.

[2]    The Court notes that, even if it were to find this
provision to be enforceable, a breach would not be established
merely by the fact that no jewelry was, in fact, returned to
Petitioner by the Government.  The Government merely agreed to
return the pieces to be agreed upon by the parties, not to
return any piece claimed to be a personal piece by Petitioner.
Petitioner has not alleged that the Government refused to
attempt to come to an agreement over these pieces, and, in fact,

8

So the Court is left with a plea agreement that contains an unenforceable provision.  Since, again, plea agreements are interpreted in accordance with general contract principles, the Court must therefore decide whether the agreement is "entire or severable."  See United States v. Araguz-Briones, 243 Fed. Appx. 64, 66 (5th Cir. 2007).  In so determining, the Court must consider the parties' intention at the time of the execution of the agreement, as determined from the language of the contract and the surrounding circumstances. See id. at 66-67.  Whether a provision of a plea agreement is severable "turns on whether it is an 'essential term' of the bargain."  Id. at 67.  As noted, Section B.5, and the accompanying provision at A.6, do not identify any particular jewelry to be returned, nor do they establish any procedure for reaching agreement as to the pieces.  It is difficult to find this provision to be essential when it fails to set out any specific agreement other than to discuss the issue further. Moreover, the provisions regarding the Personal Jewelry are a mere exception to the broader provisions regarding Petitioner's consent to the forfeiture of the jewelry seized in this case. Invalidating Sections A.6 and B.5 in their entirety would

the record shows that there were discussions between Petitioner and the Government as to these pieces.  In any event, the fact that the parties could not come to an agreement underscores the ultimate unenforceability of Section B.5.

invalidate Petitioner's agreement as to forfeiture and would

eliminate the need for any exception as to the Personal Jewelry,

rendering the provisions regarding those pieces quite non-

essential.[3]

Accordingly, the Court finds that Sections A.6 and B.5

are unenforceable, but severable from the plea agreement as a

whole.  As such, the agreement will stand, and Petitioner will

retain whatever rights he may have as to the forfeiture of

property.[4]  Therefore, the Government has not, in failing to

return the seized pieces of jewelry, breached the plea

agreement.

### B.   Counsel's Alleged Ineffectiveness

Petitioner's next argument fares no better.  He

asserts that the waiver provision of his plea agreement is not

enforceable because it does not apply to claims of ineffective

assistance of counsel in connection with the negotiation of the

---

[3]   While the provisions regarding the Personal Jewelry are not
essential to, and therefore severable from, the plea agreement
as a whole, these provisions are clearly essential to the
sections of the agreement pertaining to forfeiture, and these
sections therefore must be considered in their entirety.

[4]   The Court notes that Petitioner has, in fact, raised claims
in the related forfeiture action pertaining to the seized
jewelry at Civil No. 12-1171.  The Court further notes that,
currently pending in that case is a motion to dismiss his claims
on procedural grounds.  The Court emphasizes that its holding
here in no way constitutes a holding that the claims filed by
Petitioner in that action are valid or that they are not subject
to dismissal on the grounds raised by the Government.

plea agreement, relying primarily on <u>United States v. Shedrick</u>, 493 F.3d 292 (3d Cir. 2007).  The ineffectiveness to which he refers is counsel's failure to ensure that the plea agreement accurately and comprehensively expressed the oral promises, agreements, and understandings that induced his guilty plea. Specifically, he argues that counsel failed to ensure that the plea agreement contained the Government's agreement to recommend a sentence of lower than 10 years for him and a sentence of 18 months' probation for his wife and son at Criminal No. 11-37 in exchange for his cooperation in the recovery of assets, and to ensure that the agreement was specific enough as to the Subject Jewelry.  Unfortunately for Petitioner, this argument is conclusively refuted by the record.

        The plea agreement, indeed, does not contain any reference to any deals between Petitioner and the Government as to any recommendation for a lesser sentence, but the record demonstrates that this was intentional.  First, the agreement itself expressly provides that Petitioner understands that the Government will seek a 20-year sentence, which would contradict any claim that a Government recommendation for a lesser sentence was part of the agreement.  Even in the absence of this specific language, the agreement not only contains no mention of a Government recommendation, it also provides that it

> sets forth the full and complete terms and
> conditions of the agreement between
> [Petitioner] and the [Government], and there
> are no other agreements, promises, terms or
> conditions, express or implied.

Petitioner signed the agreement and agreed at the plea hearing
that he had agreed to the terms set forth in the agreement,
which both the Government and the Court reviewed for him at that
hearing.  The court also asked Petitioner:

> Has anyone made a threat to you or to
> anyone else that's forced you to plead
> guilty?
>
> Has anyone made any promise other than
> the promises made in the plea agreement that
> have induced you to plead guilty?
>
> Have you been instructed by the
> Government attorney, your own attorney, or
> anyone else to respond untruthfully to any
> question?

Petitioner responded in the negative to all of these questions.
Petitioner was therefore directly asked if there were additional
agreements or promises that were inducing his plea, and he
indicated that there were not.

Now, years later, Petitioner asks the Court to ignore
not only the express language of the plea agreement, but also
his sworn testimony during his plea hearing, and accept that
there were, in fact, additional provisions not brought to the
Court's attention.  However, representations and admissions made

under oath at a plea hearing are entitled to great deference, and Petitioner faces a great burden in overcoming the strong presumption of the veracity of any such representations and admissions.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Morris v. United States, 2008 WL 1740679, at *5 (D. Del. Apr. 16, 2008).  Indeed, "[s]tatements made during a hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict these statements may generally be dismissed as frivolous."  Plante v. United States, 2012 WL 6765028, at *8 (S.D. W.Va. Nov. 27, 2012)(citing United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005)).  Petitioner has failed to meet his great burden to overcome the veracity of his earlier statements made under oath here.  In fact, he makes little attempt to explain his responses to the Court's direct questioning that would indicate that the written plea was, as it itself states, the full and complete agreement of the parties in regard to Petitioner's plea.

Not only does Petitioner offer no explanation, he fails to acknowledge that Government counsel made statements specifically refuting that there were additional agreements between Petitioner and the Government of the nature alleged here.  Government counsel, in reviewing the terms of the plea agreement for Petitioner and the Court, specifically stated that

Petitioner "understands that the Government will be seeking the imposition of the 20-year sentence," but that he "does reserve the right to urge the Court to impose a more lenient sentence." Further, Government counsel, at sidebar, specifically disagreed that Petitioner's assistance in working with the bankruptcy trustee in the related civil cases was part of the plea agreement.[5] After the Government's review of the terms of the plea agreement, Petitioner was asked whether he had agreed to the terms as stated, and he answered that he had.

Therefore, Petitioner is essentially asking the Court to ignore the language of the plea agreement and everything that happened at his change of plea hearing, including his own sworn statements, and, instead, allow him to argue that his plea agreement was entirely different. He does this with virtually no explanation as to why what he is claiming now contradicts what he said under oath at the hearing. This does not come remotely close to overcoming the presumption that his sworn statements were true, and, accordingly, no hearing is needed to adjudicate Petitioner's claims on this ground. See Plante, 2012 WL 6765028, at *8 (citing Lemaster, 403 F.3d at 221-22) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively

---

[5]    Contrary to Petitioner's contention, he was, in fact, present at the sidebar conference.

established, and a district court should, without holding an
evidentiary hearing, dismiss any § 2255 motion that necessarily
relies on allegations that contradict the sworn statements.").

The record conclusively shows that Petitioner was
fully aware of the nature and terms of the plea agreement.
Moreover, any claim that his counsel failed to include
additional terms in the plea agreement is conclusively refuted
by Petitioner's admissions at the plea hearing that there were
no additional promises that had induced his plea and by the
Government's statements specifically denying the existence of
these other agreements, which Petitioner stated he understood.
Regardless, there is no claim, much less any evidence, that the
Government would have agreed to the inclusion of any of the
additional agreements Petitioner claims should have been in the
written plea agreement, and, as discussed, the record actually
shows that the Government would not have been amenable to such
language. Therefore, even if Petitioner could establish that
his counsel was ineffective for failing to seek the inclusion of
such additional provisions, he cannot establish that he was
prejudiced by counsel's failure to do so. See United States v.
Romero-Gallardo, 113 Fed. Appx. 351, 354 (10th Cir. 2004); United
States v. Boone, 62 F.3d 323, 327 (10th Cir. 1995). See also

Lawuary v. United States, 199 F. Supp. 2d 866, 877 (C.D. Ill. 2002).

Petitioner's argument that his counsel was ineffective in failing to ensure that the agreement was more specific as to the Subject and Personal Jewelry likewise falls short. As the Court discussed above, the provisions in the plea agreement pertaining to this jewelry, Sections A.6 and B.5, do not identify any specific jewels to be returned or any mechanism for determining what jewels were to be returned. However, Petitioner does not establish that this vagueness was because of counsel's wrong-doing. Indeed, there is no claim, much less any evidence, that Petitioner specifically identified jewelry that was to be returned that counsel failed to include in the plea agreement. The only evidence that he provides that he ever identified any specific pieces is from over a year after he was sentenced. Regardless, there is no claim, much less any evidence, that the Government would have agreed to return any specific pieces, and, therefore, he cannot establish that he was prejudiced by his counsel's failure to seek the inclusion of more specific language regarding the Subject and Personal Jewelry. See Romero-Gallardo, 113 Fed. Appx. at 354; Boone, 62 F.3d at 327; Lawuary, 199 F. Supp. 2d at 877.

Accordingly, Petitioner cannot establish that counsel was ineffective in regard to the plea agreement, and cannot establish that his plea was anything other than knowing and voluntary. The Court notes that Petitioner, in fact, does not even claim that the waivers contained in the plea agreement were themselves anything other than knowing or voluntary. The Court questioned Petitioner extensively regarding the waiver of his right to file a collateral attack as to his plea and sentence:

> Do you understand that ordinarily you or the Government may have the right to appeal any sentence the Court imposes; however, the Court notes that in paragraph A13 of the plea agreement, you and the Government agreed that you would waive, that is, give up your right to take a direct appeal from your conviction or sentence subject to the following exceptions:
>
> First, if the United States appeals from the sentence, you may take a direct appeal from the sentence. Do you understand that?
>
> Second, You may also take a direct appeal from the sentence only on the following grounds:
>
> The sentence exceeds the applicable statutory limits set forth in the United States Code. Do you understand that?; or
>
> The sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines. Do you understand that?

To repeat, by these provisions of the
plea agreement, you're giving up the right
to appeal both the validity of your pleas of
guilty and the legality of your sentence.
Do you understand that?

Further, you have also waived the right
to file a motion to vacate sentence under
Title 28 of the United States Code, Section
2255, and the right to file any other
collateral proceeding attacking your
conviction or sentence.  Do you understand
that?

Petitioner answered all of these questions in the affirmative.

The Court therefore continued:

The waivers you have entered into are
generally enforceable if entered into
knowingly and voluntarily unless they work a
miscarriage of justice.  Has anyone made a
threat to you or anyone else that has forced
you to waive these rights?

Has anyone made any promise to you other
than the promises made in the plea agreement
that have induced you to waive these rights?

When Petitioner responded in the negative, the Court found the

waivers to be knowing and voluntary.

Therefore, the Court again finds that Petitioner's

waiver of his right to file a collateral attack was knowing and

voluntary.  Moreover, no miscarriage of justice would occur as a

result of the enforcement of the waiver.  As the Third Circuit

has explained, in determining whether there would be a

miscarriage of justice, the Court must consider factors such as

the clarity of the alleged error, its gravity, its character, the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. See Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). After engaging in its own independent review of the record and applying the factors set forth above, the Court finds that no miscarriage of justice will occur by enforcing the collateral waiver.

As the Court has explained, counsel was not ineffective in regard to the plea or the plea agreement. However, even assuming Petitioner could establish some error on the part of his counsel, the other factors demonstrate that no miscarriage of justice would result from enforcing the waiver. Were Petitioner to be permitted to withdraw his plea, the Government would be greatly prejudiced by having to try cases that are now several years old. Further, this would be the third time it would have had to engage in a trial arising from these cases and from the same general set of facts. The trial of Petitioner's co-defendant at Criminal No. 09-279, Robert Lynn, took approximately a month and involved numerous witnesses and exhibits. The trial of his co-defendants at Criminal No. 11-37, his wife Karla S. Podlucky and his son G. Jesse Podlucky,

took about the same amount of time and also involved a copious amount of testimony and exhibits. The Court, of course, is very familiar with the evidence in these cases, and it appears all but certain that Petitioner would have been convicted in a manner similar to Lynn and his wife and son had he proceeded to trial. Indeed, Lynn was actually convicted of aiding and abetting Petitioner, so there was obviously a substantial amount of evidence incriminating Petitioner presented during Lynn's trial. Likewise, the trial of Karla and Jesse Podlucky involved a great deal of evidence incriminating Petitioner.

Moreover, Petitioner would lose the beneficial sentencing considerations in his plea agreement were he to be permitted to withdraw his plea and proceed to trial. The Court accepted the parties' agreement that Petitioner's sentence of imprisonment be capped at 20 years. The recommended guideline sentence, however, was 55 years. As this Court was the sentencing court, it can say with confidence that there is a good chance that it would not have departed or varied downward but for the agreement contained in the plea agreement. Even if the Court would have departed or varied, it would not have done so to the degree to which the parties had agreed. In no event would the Court have imposed a sentence of incarceration any lower than the 20-year sentence he received, as any such

sentence would not have been sufficient to address the factors set forth in 18 U.S.C. § 3553(a). As such, Petitioner would likely be facing a much longer sentence were the Court to permit him to withdraw his plea and proceed to trial.[6]

Finally, Petitioner acquiesced in any error by his counsel in regard to the plea agreement. As noted above, he represented to the Court that he understood that he was waiving certain rights in exchange for the sentencing consideration contained in the plea agreement. The court also asked Petitioner:

> Has anyone made a threat to you or to anyone else that's forced you to plead guilty?
>
> Has anyone made any promise other than the promises made in the plea agreement that have induced you to plead guilty?
>
> Have you been instructed by the Government attorney, your own attorney, or anyone else to respond untruthfully to any question?

Petitioner responded in the negative to all of these questions. He only now claims to have had a different understanding of what was supposed to be included in the plea agreement, well after the fact.

---

[6] Therefore, even if Petitioner were to seek merely to be re-sentenced, he faces no miscarriage of justice in the enforcement of the waiver, because the Court would not under any circumstances have imposed a sentence any lower than the one he received.

In sum, no miscarriage of justice will occur if the waiver is enforced. The Court's independent review of the record reveals nothing to the contrary. The Court further notes that the Third Circuit has already enforced the appellate waiver contained in the same plea agreement.

### C. Counsel's Alleged Conflict of Interest

Petitioner's final argument is that his counsel's alleged conflict of interest prevented counsel from negotiating a better plea agreement. The Court has already found that Petitioner cannot establish any error on behalf of counsel in regard to the negotiation of the plea agreement, so it is unclear what the results of the alleged conflict of interest actually were. Indeed, Petitioner does not explain, much less offer proof as to, how the alleged conflict of interest resulting from the Government's investigation of counsel affected the legal advice counsel offered to Petitioner or counsel's performance.[7] Moreover, as with Petitioner's prior argument, he does not allege or offer proof that the Government would have accepted any hypothetical agreement that counsel may have offered in the absence of the alleged conflict. Finally, the Teeter factors set forth in Khattak would similarly demonstrate that, even assuming an error by counsel, no

---

[7] The Court further notes that the investigation was in regard to money given to counsel by Petitioner himself.

miscarriage of justice will result from enforcement of the waiver to file a collateral attack.

**III.** <u>**Conclusion**</u>

       Petitioner's motion is dismissed.  Moreover, because Petitioner waived his right to file any such motion, this Court does not reach the merits of Petitioner's claims, and there would be no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).


                                 s/Alan N. Bloch
                                 United States District Judge

Date:  December 29, 2014

ecf: Counsel of record

cc:  Gregory J. Podlucky, Fed. Reg. No. 30494-068
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640